## KIMBALL *v.* FISK.

The proceedings of courts of probate in relation to the appointment of guardians of insane persons, are not void, however irregular or erroneous, if the court has jurisdiction of the subject matter of the proceeding.

Want of notice to the party renders the proceedings voidable by parties injured, not void as to every body.

Defect of form in the precept or return of an inquisition, will not render them mere nullities, if the sanity of the party is made the subject of inquiry, and the selectmen make a distinct return as to that point.

The recital of a decree of insanity in the letter of guardianship is a sufficient foundation for an amendment of the record, by entering up such decree, after proper notice.

Courts of probate have incidentally the power to adjourn, when they judge it necessary for the transaction of the business; and this incidental power will not be restricted by a statute authorizing an adjournment in a specific case.

The constitutional provision that probate courts shall be held at times and places fixed by law, having no negative words, is not necessarily construed to divest their jurisdiction at other times and places.

TROVER, for certain articles which were the property of the plaintiff, on the 20th of June, 1852.

Kimball v. Fisk.

The defendant took the property into his possession and converted it, and is liable therefor, unless he is justified by the following state of facts: On the 21st of June, 1852, the overseers of the poor for the town of Whitefield, in the county of Coös, presented their petition to the judge of probate for that county, setting forth that Thomas H. Kimball, an inhabitant of that town, and then in the county jail, was an insane person, and incapable of taking care of himself, and requesting that said judge of probate would cause inquisition thereinto to be made, and a guardian to be appointed, &c.; that "at a court of probate holden at Lancaster, in said county, on the said 21st day of June, 1852, it was ordered that inquisition of said Thomas H. Kimball be made, and that a hearing be had on the foregoing petition, at a court of probate to be held at the office of J. W. & G. C. Williams, in said county, on the 25th day of June instant, and that the petitioners notify the said Kimball to appear and show cause, if any he had, why a guardian should not be appointed over him, by giving in hand to the said Kimball, or leaving at his last and usual place of abode, in Whitefield, an attested copy of the foregoing petition and this order thereon, or reading the same to him at least three days before said court; that on said 21st day of June, 1852, the following warrant was issued by said judge of probate to the selectmen of the town of Whitefield, in said county; 'that on the foregoing petition, representing Thomas H. Kimball, of your town, an insane person, and praying inquisition to be made, and a guardian appointed, it is ordered, that you visit the said Kimball, and make such personal examination and inquiry into his condition as will enable you to certify the same to the court at the time above specified;' upon which the said selectmen made the following return under oath: 'In compliance with the foregoing warrant, on the 25th day of June instant, we visited the said Thomas H. Kimball, and made personal examination and

careful inquiry into his condition, and in our opinion said
Thomas H. Kimball is an insane person.'" The petition
and order of notice were served on said Kimball June 21,
1852, " by reading the application and the order annexed,
in his presence and in his hearing;" and on June 22, on
Morris Clark and Daniel Jewell, by reading the same in
their presence and hearing, they being two of the select-
men for the town of Whitefield for the current year.

On the 5th day of November, 1852, Thomas Mont-
gomery, who had been recommended as a suitable person
for such guardian, declined, in writing, to accept the trust,
and recommended the defendant as a suitable person; and
the plaintiff assented to his appointment, in the following
words, subscribed by him on said resignation: "I, the
said Thomas H. Kimball, join with the nomination of said
Fisk." No decree that said Kimball was insane, and none
appointing a guardian, were ever formally entered upon
record. Letters of guardianship over said Kimball as an
insane person, dated November 5, 1852, were granted to
said Fisk, signed by said judge of probate, and under the
seal of said probate court; which recite that "upon
inquisition of the selectmen of the town of Whitefield, in
said county, it has been decreed by me that Thomas H.
Kimball, an inhabitant of said town, is an insane person,"
&c. The defendant accepted said trust, gave bonds, &c.
The plaintiff denies that he was insane at the time of said
proceedings.

Carpenter, for the plaintiff.

The proceedings of the court of probate in appointing a
guardian over the plaintiff were without jurisdiction, and
void.

I. Because the proceedings appear by the record to
have been had at terms of the probate court held at
Lancaster, on the 21st and 25th days of June, A. D. 1852,
respectively, while by law no probate court could have

Kimball v. Fisk.

been held at Lancaster on either of those days. Pamphlet Laws, ch. 230; Comp. Stat., ch. 163. They do not appear by the records to have been adjourned terms, and if they had been, the judge would have had no authority to initiate proceedings, or to consider any subject except some matter then "pending before him." Comp. Stat., ch. 161, sec. 16. The judge of probate has no authority to appoint special terms of the court in any case. No such authority is attempted to be given by statute, and any act passed for that purpose would be unconstitutional. Constitution of N. H., sec. 80. The judge has no authority to act judicially in vacation, except in certain cases (of which this is not one), where the power is expressly given him by statute; Comp. Stat., ch. 9, sec. 11; and in that case he acts rather as a magistrate than as a court of probate. The whole proceedings were, therefore, *coram non judice*, and utterly void.

II. Because the notice prescribed by statute was not given to the plaintiff. 1. The record does not show that any notice whatever was given to the plaintiff. The certificate of service is not verified by oath, and does not appear to have been subscribed by the person whose name is affixed thereto. 2. Only three days' notice was ordered, or attempted to be given, while the statute requires fifteen at least. 3. The notice, if any was given, was served by reading, while the statute prescribes that it shall be served by "giving to the party to be notified, in person, or leaving at his usual place of abode, a certified copy." Comp. Stat., ch. 164, sec. 3. Service made by giving a copy *not certified* would have been insufficient. *Carlton* v. *Washington Ins. Co.*, 35 N. H. 162. *A fortiori*, therefore, service by reading is insufficient. *Hunt* v. *Gray*, 3 Sum. 339. The case finds that the plaintiff was not present and took no part in the proceedings; there was, therefore, no waiver of the want of notice. It is essential to the jurisdiction that the notice prescribed by law should be given. Comp.

Stat., ch. 159, sec. 11; *Brown* v. *Sceggell*, 22 N. H. 548; *Chase* v. *Hathaway*, 14 Mass. 222; *Conkey* v. *Kingman*, 24 Pick. 119; *Wait* v. *Maxwell*, 5 Pick. 117; *Hathaway* v. *Clark*, 5 Pick. 490; *Shumway* v. *Shumway*, 2 Vt. 339; *Brent* v. *Pratt*, 18 Pick. 115; *Hunt* v. *Gray*, 3 Sum. 339.

III. Because no legal inquisition was made. 1. The warrant was not under seal of the court, and was, therefore, void. *Hutchins* v. *Edson*, 1 N. H. 139. 2. The warrant required the selectmen to make such personal examination and inquiry into the plaintiff's condition as would enable them to certify the same to the court, but it neither required nor authorized them to inquire into his sanity, or to certify to the court whether he was insane or not. The selectmen have no power to act except under and by virtue of their warrant. They can act only as they are "caused," or directed to act, by the judge of probate. Comp. Stat., ch. 159, sec. 10; *Colby* v. *Jackson*, 12 N. H. 529. Any action of theirs, not required by the terms of their precept, is of no more consequence than the action of any other three men who might volunteer to act in the matter, and can afford no legal foundation for proceedings by the judge of probate. Therefore we say, that the opinion expressed by the selectmen in their return could not be legally considered by the judge of probate, and afforded no foundation for his proceedings. 3. The return of the selectmen is to be governed by the same principles of law applicable to the returns of other officers. It is evidence of no facts therein stated, except such as they are required by law to return or certify. *Davis* v. *Clement*, 2 N. H. 390; *Hathaway* v. *Goodrich*, 5 Vt. 65; 4 Cow. & Hill's Notes to Phill. Ev. 794; *Angier* v. *Ash*, 26 N. H. 106. We say, therefore, that there is no evidence appearing in the records that any inquisition into the plaintiff's sanity was made. 4. No notice of this inquisition was given to the plaintiff. 5. The return of the selectmen is vague, uncertain and insufficient. It does not appear from it that they

inquired into the plaintiff's sanity. They inquired into his "condition," but whether into his pecuniary, physical, mental, or moral condition is not stated. So we say that it no where appears by the record that any legal inquisition was made. Till such inquisition is made and returned, the judge of probate has no power or authority to determine that a person is insane, and appoint a guardian. Comp. Stat., ch. 159, secs. 10 and 11; *H——* v. *S——*, 4 N. H. 60.

IV. The plaintiff was never decreed insane, and the judge clearly had no power to appoint a guardian over him, until, upon due examination had, such decree was made. Comp. Stat., ch. 159, sec. 11; *H——* v. *S——*, 4 N. H. 60. The recital, in the letters of guardianship, is neither a decree nor evidence of a decree. The letters form no part of the record. The court will not presume that any thing was done which does not appear of record. *Hathaway* v. *Clark,* 5 Pick. 490; *Brown* v. *Sceggell,* 22 N. H. 557. A record of a decree cannot now be made. There is nothing in the record to amend by; nothing to show when the decree was made, or that it was made at all. It would be supplying, not amending, a record. It would be giving to oral testimony that uncontrolable verity which belongs only to judicial records. We do not see the use of having any records, if they are to be manufactured wholly upon the uncertain recollection of witnesses, six or seven years after the transaction. *Limerick's Petition,* 6 Shep. 183; *Wendell* v. *Mugridge,* 19 N. H. 112.

V. The court of probate is an inferior court, of special and limited jurisdiction. Its authority over insane persons is partly statutory, and if it adopts a course at variance with that prescribed by statute, its proceedings are without jurisdiction, illegal, and void, and the defect may be shown collaterally. *Brown* v. *Sceggell,* 22 N. H. 550; *Russell* v. *Perry,* 14 N. H. 155; *H——* v. *S——*, 4 N. H.

60 ; *Hendrick* v. *Cleavland,* 2 Vt. 337 ; *Merrill* v. *Harris,* 26 N. H. 147 ; *Fisk* v. *Eastman,* 5 N. H. 240 ; *Gorrill* v. *Whittier,* 3 N. H. 268 ; *Hunt* v. *Gray,* 3 Sum. 339.

*Burns & Fletcher,* for the defendant.

The statute gives the court of probate authority to appoint guardians over the insane.    Comp. Stat., ch. 159. The plaintiff's exceptions are all confined to the proceedings of the probate court prior to the appointment of the defendant as guardian over the plaintiff.    No objection has been suggested to the general jurisdiction of the probate court to appoint guardians over the insane.    The case finds that the plaintiff had due notice of the proceedings before the probate court.    If the court has jurisdiction, and the execution is regular on its face, an officer may justify under it, however erroneous or irregular it may be. *Keniston* v. *Little,* 30 N. H. 318.    It appears that the defendant's appointment as guardian was regular on its face.    He was in no way a party to the prior proceedings of the probate court, and cannot be made responsible for any irregularity in those proceedings.    The decisions are numerous and uniform, so far as relates to officers of this character.    *State* v. *Weed,* 21 N. H. 262, and cases there cited.

BELL, J.    Though the proceedings in this case are not such as we think they should have been, yet it by no means follows that they are void, or that they can be impeached, when they are collaterally and incidentally brought in question.

The want of jurisdiction of the subject matter renders the proceedings void.    *State* v. *Richmond,* 26 N. H. 439. This case is not one of that class.    By the general statute relative to the jurisdiction of judges of probate (Revised Statutes, ch. 152, sec. 4), it is provided, that " such judge shall have jurisdiction in relation to the appoint-

ment and removal of guardians of minors, insane persons and spendthrifts."

The provisions relative to the appointment of guardians for the insane (Revised Statutes, ch. 150, secs. 10, 11), are very brief. They provide that " upon application of any relative, or friend of any insane person, or upon the like application of the overseers of the poor of the town in which such person lives, made to the judge of probate for the county in which such town is situate, that a guardian may be appointed over such person, the judge shall cause the selectmen of the town in which such person lives to make inquisition thereinto. If, upon the return of such inquisition, and due examination had, it shall be decreed that such person is an insane person, the judge shall appoint a guardian over such person.; but no such decree or appointment shall be made until such person shall have been cited to appear and show cause against the same."

Here the judge acted upon the application of the overseers of the poor of a town in which the supposed insane person lived, within his county, alleging his insanity, and praying that a guardian should be appointed. These are all the facts required by these sections to give to the court jurisdiction in cases of this kind, so far as the subject matter is concerned. To render the proceedings regular, it is further required that there should be an inquisition and notice to the party; but the court must have jurisdiction of the subject matter before either of these can be ordered.

Want of jurisdiction of the person of a party, by the service of process, or notice, renders proceedings voidable, not void. 26 N. H. 241. They may be avoided by those who are injured, or who have just cause to complain, until they have been confirmed; but the exception may be waived, and the proceedings confirmed by the same parties at any time before they have been actually avoided. The record before us shows that proper notice was ordered,

and a kind of notice was in fact given. But the provision of the statute is but in fact a repetition of a well settled principle of the common law, and the want of the notice prescribed by both merely affected the regularity of the proceedings.

The statute required an inquisition. Here we find an order of the court for an inquisition, and a precept directed to the selectmen of the proper town, referring to the petition, stating that it represented the plaintiff as an insane person, and praying an inquisition, and that a guardian should be appointed, and directing them to visit him and make personal examination and inquiry as to his condition, and certify the same to the court. This is a most defective document, wanting almost every thing that it ought to contain to guide the selectmen in the discharge of their duties ; duties which it cannot safely be assumed they will know without instruction.

The return, or inquisition, shows that the selectmen visited the plaintiff, made a personal examination and careful inquiry into his condition, and they certify that in their opinion he is an insane person. This, too, is very deficient. It does not show, as it ought, how they performed their duties, that the court may judge whether they are properly performed, and both of them, upon proper objections, might have been set aside, either in the court of probate, or upon appeal, because, in a case involving the right to liberty and the control and enjoyment of a man's property, nothing should be left to presumptions. It should appear that every thing was done rightly and legally. But the selectmen here found the fact which the precept seems to require them to ascertain, that the plaintiff was insane. The papers thus contain the substance of what the law intended ; and we are of opinion, as was held in *H——— v. S———*, 4 N. H. 65, that they cannot be treated as nullities ; and for the same reason the decrees of the probate court are not made void by this defect. *Raymond v. Wyman*, 18 Me. (6 Shep.) 386.

Kimball v. Fisk.

There does not appear to be any formal record of a decree that the plaintiff was a person of unsound mind; and it is contended that without such a decree there can be no valid appointment of a guardian. And we think that is clearly so, not only from the nature of the case, but from the terms of the statute before cited. But the defect here seems not to be the want of such a decree, but rather the neglect to make a proper record of it. The record of the letter of guardianship contains a recital of such a decree, and the application for the appointment of the defendant as guardian distinctly admits it; and we think there can be no doubt of the power of the court to amend the record by entering up such a decree, nor of the propriety of its exercise, upon proper notice to parties interested. *Remick v. Butterfield,* 31 N. H. 70.

The plaintiff was the party chiefly affected by these proceedings, and though they are wisely designed as well for the safety of all who may have occasion to deal with the party, or his guardian, as for his own security, yet, so far as they affect the party himself, he may waive the exception, if he has capacity; and this we think must be regarded as effectually done in this case, by the petition of the plaintiff for the appointment of the defendant as his guardian, if we should assume, or it should be proved, as the plaintiff now asserts, that he was then of sound mind.

In the argument it has been suggested that the courts of probate are courts of merely statutory, special and limited jurisdiction, and this view is expressed in some books to which we are accustomed to look as authority; but we are much inclined to question the soundness of the opinion. The powers of courts of probate were conferred in Massachusetts on the county courts, and in some cases on special commissioners, while New-Hampshire was subject to that colony, but they were conferred as a body of well known principles and rules; a settled and general juris-

diction then existing at common law in the ordinary or ecclesiastical courts. The statutes of the colony did not attempt to define or prescribe the powers of those courts in general, otherwise than by a reference to the existing law of the land. The like state of things has continued from that day to the present. The jurisdiction of probate courts has been vested in different officers at successive periods in the history of the Province ; but, excepting in a few cases, the general system of probate jurisdiction has remained as defined at common law. The legislature have attempted to correct many errors into which ill-informed judges have fallen, so that now many matters are regulated, partly by common law and partly by statute, though the general system is that of the common law. The jurisdiction of probate courts was at common law restricted to proceedings relative to the estates of persons deceased. Here, by statute, many other branches of authority have been added, but always with a reference to the common law and the course of proceedings in England, in the courts in which the like jurisdiction was vested. Such are the distribution of insolvent estates, the appointment of guardians of minors and insane persons, trusts and trustees, division of estates, &c. Several of these were well known powers exercised by the court of chancery.

As to all these, we think it might be contended that the courts of probate, and this court, which is the Supreme Court of Probate, and derives its whole authority from statutes, stand on the same ground. They are not to be regarded as courts of special and limited jurisdiction, but as courts of general jurisdiction on these subjects, and entitled to all the presumptions in favor of their proceedings which are allowed in the case of other tribunals of general jurisdiction, more especially as they are now made, by statute, courts of record.

In the case of *H*—— v. *S*——, 4 N. H. 65, the broad position was taken by eminent counsel, that the courts of

Kimball *v.* Fisk.

probate were required by the constitution to be held on fixed days appointed by law. The argument was strongly pressed, and though the court in their decision made no reference to that point, yet they gave to it their countenance in some degree by publishing it in the Reports; and much of the legislation of the State has taken its shape from the doubts created in many minds by that argument. It is here contended that these proceedings are void, because by law no court was appointed to be held upon the 21st and 25th of June, A. D. 1852, when these proceedings were had. But we find great difficulty in reaching the conclusion that this objection is well founded.

By the common law, courts of probate and chancery are always open for the transaction of business; and it does not seem necessarily to be inferred from the language of the constitution that it was intended to limit and confine the jurisdiction of probate courts, so that they would have no authority to act except on the days fixed by law. For the convenience of the people it would seem to have been intended that probate courts should be held on fixed days and at fixed places, where all might conveniently attend; but it does not seem to have been necessary, for any purpose apparently in view, to divest the judge of his authority at all other times and places. There are no negative words, declaring that the powers of the courts shall not be exercised at other times and places, and the jurisdiction of courts is not generally taken away unless the language imports that the jurisdiction is not longer to be exercised.

We understand that, from the adoption of the constitution till now, it has been the practice of the courts of probate to receive petitions and issue orders of notice, to appoint administrators and guardians, and to do many other acts, substantially of a formal character, at other than probate days. All these, still, are judicial acts, and require the authority of the court to be exerted; and we think great inconvenience would be caused if no order of

notice or the like could be issued, but upon a regular court day.

Since the case of *H*—— v. *S*—— the statutes have been much modified, and by the Revised Statutes, ch. 152, sec. 16, " the judge may adjourn his court for the trial and decision of any matter pending before him to any convenient time and place." It is contended that this statute confers no power upon the court to adjourn for the transaction of its official duties generally, but merely enables it to adjourn for the trial of cases then pending before it. But this seems to us a narrow and rigid construction. It seems more reasonable to hold that if the business before the court requires an adjournment, the court may adjourn, but when the court is opened in pursuance of the adjournment, it is open for the transaction of any business, as on the regular days appointed for its sittings. Any other construction would be attended with great practical inconvenience in those counties where the business is occasionally too much to be completed in a day, and adjournments are necessary to complete it.

Courts of probate have, we think, as incident to their character of courts, the power of adjourning whenever they deem it necessary for the transaction of their business; Com. Dig., Courts, 11 ; *Swinstead* v. *Lyddall,* 1 Salk. 408 ; and we think it ought not to be inferred, from the fact that the legislature have conferred the same power by statute, in some qualified form, that it was designed to limit the general power ordinarily incident to courts of justice. It would be more reasonable to suppose that it was merely intended to obviate a doubt such as we have referred to.

If it should be regarded as irregular that business should be done by the judge of probate on days not appointed by the law, still this is hardly to be regarded as a matter affecting the jurisdiction of the court over the subject matter. If the proceedings would be set aside on motion,

seasonably made in the probate court, or in this court on appeal, still the court has not acted beyond its jurisdiction. The defect is one not necessarily fatal, since it may be waived, or released; and consequently, so long as the proceedings remain, and are not set aside on motion or appeal, all parties are bound by them, and they cannot be treated as nullities, when they are incidentally brought in question.

Upon the facts appearing in this case, the defendant has a perfect defence to the action.